UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN BRACY,

      Plaintiff,                      Case No. 2:20-cv-10969

                                        District Judge Mark A. Goldsmith

v.                                 Magistrate Judge Kimberly G. Altman

CONSUMERS ENERGY COMPANY
and RICHARD T. SCOTT,

      Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 17)

### I.  Introduction

This is an unlawful termination case.  Plaintiff Brian Bracy asserts claims under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, and Michigan's Elliott–Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2202(1)(a), based on age, race, and sex, as well as state tort law.  Defendants Consumers Energy Company (Consumers) and Richard T. Scott have moved to dismiss all claims except for the ERISA claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 17).  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 30).  For the reasons that follow, the undersigned recommends that defendants' motion be DENIED.

1

## II.  Background

In considering the sufficiency of the complaint as challenged by a 12(b)(6) motion, the Court draws the facts from the allegations of the complaint, assuming that the allegations are true and viewing the facts in a light most favorable to Bracy.

Bracy is a 52-year-old Caucasian male who was employed by Consumers from January 1999 to his termination in November 2019, which he alleges was wrongful.  (ECF No. 1, PageID.4).  For the last year and a half of his employment, he was supervised by defendant Richard T. Scott.  (*Id*.).  Before his termination, Bracy was a Senior Tech Analyst Lead in the Electric Tools, Equipment, and Work Methods and Procedures Department, wherein he supervised three other employees, served as a "subject matter expert" of "OSHA/MIOSHA," and managed the purchase, distribution, repair, and asset management of tools across electric operations, among many other duties.  (*Id*., PageID.5-9).

Bracy received at least satisfactory performance reviews throughout his employment with Consumers, including his 2018 review from Scott, in which he was rated "effective."  (*Id*., PageID.9-10).  His 2018 performance review occurred in March 2019, and Scott said nothing to the effect that there were problems with Bracy's performance in the first three months of 2019 during that review.  (*Id*., PageID.10).  Nor did Bracy receive any negative feedback from Scott or anyone

2

else for his job performance in 2019 until July 29 of that year. (*Id.*, PageID.10-11).

On that date, Scott met with Bracy and placed him on a Performance Correction

Plan (PCP), assigning him five "Goals/Objectives that he was required to meet at

30, 60, and 90 day intervals." (*Id.*, PageID.11). This was a surprise to Bracy, and

in violation of Consumers employment policies, practices and procedures, as he

had not received any prior notice, formal or informal, of his supposed job

performance deficiencies. (*Id.*). This also entailed Scott communicating "false

and defamatory statements" to the executive director of Bracy's department, a Vice

President, and other individuals at Consumers in disparagement of Bracy's

character, competence, and reputation. (*Id.*, PageID.11-12). According to Bracy,

this was done for the purpose of having the PCP approved. (*Id.*, PageID.12).

These statements included:

> Brian's suboptimal performance has been noted and accounted for in many forms from lack of confidence by our internal customer, not performing all aspects of his job, not responding in a timely manner to tool issues identified from ACA's & RCA's as well as [not] taking direction from his leadership.
>
> Attention toward addressing his poor performance first began last year through informal discussion sessions, and also by identifying numerous areas for improvements in the Knowledge, Skills, and Behavior Feedback section in his 2018 PEFD.

(*Id.*). Scott either knew that the statements were false or made them with reckless

disregard to their truth or falsity. (*Id.*).

3

Bracy requested biweekly meetings for feedback on his PCP, and at no time during any of these meetings did Scott or others note that Bracy's satisfaction of the PCP was insufficient. (*Id.*, PageID.14). During the first feedback meeting, Bracy informed Scott that at least one of the 30-day goals/objectives he was assigned was impossible to achieve for reasons outside of Bracy's control. (*Id.*, PageID.14-15). But Scott did not express concern with Bracy's progress in achieving the goals of the PCP. (*Id.*). Scott did not offer support to Bracy or release him from the goal/objective that Bracy determined to be impossible. (*Id.*, PageID.15). The following feedback meetings followed this same pattern, with Scott and sometimes others from Consumers expressing no concerns over Bracy's progress but refusing to lift goals/objectives that Bracy informed them were impossible to achieve. (*Id.*, PageID.15-18).

At no time during the duration of Bracy's PCP, or after its conclusion, was Bracy informed that his performance was deficient, nor was he given any opportunity to rectify a deficient performance. (*Id.*, PageID.18-19). Instead, Scott made further "false and defamatory statements" about Bracy to the aforementioned individuals at Consumers with the purpose of securing Bracy's termination. (*Id.*). These statements included:

> [Bracy] was unable to return to the FOS Team due to a request from that team for him not to return.

4

He was not welcomed back due to lack of participation and lack of positive support of the team's goals and objectives.

He was unable to meet this component of this goal.

Brian made no effort toward reconciliation to be allowed back on the team…

This poor attitude and lack of collaboration efforts is the exact performance this plan was seeking to correct.

(*Id.*, PageID.20).

On November 19, 2019, Consumers terminated Bracy's employment, stating that his PCP had not been successful and that he could be terminated at any time as an at will employee. (*Id.*, PageID.21). Bracy alleges that the PCP and Scott's false statements were a pretext for discrimination against him based on his age, race, and gender. (*Id.*, PageID.22). He further alleges that similarly situated younger, female, and non-Caucasian colleagues not subjected to PCPs and were not terminated from employment. (*Id.*, PageID.24).

### III.  Standard for Dismissal

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). "Whether jurisdiction over a state law claim is premised on diversity *or supplemental jurisdiction*, a federal court must apply state substantive law and federal procedural law when adjudicating the claim." *Stojcevski v. Cty. of Macomb*, No. CV 15-11019, 2016 WL 2893016, at *2 (E.D. Mich. May 18, 2016).

## IV. Analysis

Defendants argue that Bracy's claims under the ELCRA are formulaic and conclusory, and do not meet the plausibility standard set forth in *Twombly* and *Iqbal*, *supra*. They further argue that Bracy has failed to state a claim of defamation, tortious interference with an employment contract, or tortious

interference with a business relationship or expectancy by failing to meet all of the elements of said claims.  Each claim is considered in turn below.

### A.  ELCRA (Claims II, III, and IV)

#### 1.  General

The ELCRA prohibits discrimination in the workplace.  Specifically, MCL 37.2202(1)(a) states in relevant part as follows:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

 "A plaintiff may bring a discrimination claim under the ELCRA based on disparate treatment or disparate impact discrimination because of any of the above-protected classes." *Wolfgang v. Dixie Cut Stone & Marble, Inc.*, No. 285001, 2010 WL 199595, at *1 (Mich. Ct. App. Jan. 21, 2010) (citing *Wilcoxon v. Minnesota Mining and Mfg. Co.,* 235 Mich. App. 347, 358 (1999)).  A disparate treatment claim alleges direct evidence of discrimination, whereas a disparate impact claim must satisfy the *McDonnell Douglas* test:[1] the plaintiff must show that (1) [he] belongs to a protected class, (2) [he] suffered an adverse employment action, (3)

---

[1] Named for the elements set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[he] was qualified for the position, and (4) [he] suffered the adverse employment action under circumstances inferring discrimination. *Id*. (citing *Lytle v. Malady (On Rehearing),* 458 Mich. 153, 172-73 (1998). But these prima facie elements are an evidentiary standard, not a pleading requirement. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 512. Requiring the plaintiff to plead the elements for indirect discrimination ignores that he or she may uncover direct evidence of discrimination in the discovery process. *Id*. at 511-12.

## 2.  Application

Defendants argue that once Bracy's allegations are stripped of their conclusory statements, he is not left with a plausible case for discrimination based on age, race, or sex. Defendants are correct that under *Iqbal*, the Court shall not consider legal conclusions couched as factual allegations, and Bracy must make a plausible, and not merely possible, case for discrimination. 556 U.S. at 678–79. But "[t]he Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*," meaning that Bracy is not required to specifically plead the prima facie elements of the *McDonnell Douglas* test. *Keys*, 684 F.3d at 609. Neither *Twombly* nor *Iqbal* have signaled "the death of notice pleading," nor did they abrogate the 'short and plain statement' requirement of

Rule 8.  *Id*.  And though some of Bracy's allegations are indeed conclusory, "the
conclusory nature of particular allegations cannot alone justify dismissing a
complaint."  *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (citing *Erickson v.
Pardus,* 551 U.S. 89 (2007)).  Though *Back* dealt with a First Amendment claim of
political affiliation discrimination, the court held that "at the pleading stage, it
suffices that Back alleged that she 'was terminated by defendants Hall and
Schrader by reason of her political affiliation as a Democrat.' "  *Id*. (quoting the
complaint).  Similarly, Bracy need only state a plausible case that he was put on
the PCP and ultimately terminated by reason of his age, race, or gender, to survive
dismissal at this stage.

Under the pleading standard, Bracy has stated plausible claims under the
ELCRA.  It can reasonably be inferred from the complaint that Bracy is a
Caucasian male that was 52 years old at the time of the relevant allegations.  He
has presented a plausible claim for discrimination in that he was subjected to a
PCP despite never receiving a performance rating below "effective" or
"satisfactory."  Some requirements of the PCP were impossible for Bracy to
achieve, due to no fault of his own, and he raised this issue to his supervisor and
others only to be ignored.  At the conclusion of the PCP, and after receiving no
negative feedback regarding his adherence to it, he was terminated.  Bracy has
further alleged that his treatment and termination were a pretext for discrimination

based on his race, age, and gender, and that similarly situated employees of other races, ages, and gender were treated differently.  Given these allegations, defendants have sufficient notice of the basis of Bracy's ELCRA claims and were Bracy to prove these allegations with incontrovertible evidence, he would be entitled to relief.

Beyond reciting the alleged facts, defendants largely ignore Bracy's detailed factual account of the PCP, its unwarranted imposition on Bracy, and its impossibility, which ultimately led to Bracy's termination.  These are the elements that render it plausible that defendants' actions were pretexts for discrimination. Defendants instead concentrate on Bracy's lack of factual content surrounding the different treatment of similarly situated employees.  Defendants are correct that Bracy offers no names or descriptions of these individuals besides being younger, female, and non-Caucasian.  But alleging similarly situated coworkers is not a requirement at this stage of the pleadings; it is only one means of inferring indirect discrimination under *McDonnell Douglas*.  And as noted *supra*, pleading the prima facie elements of *McDonnell Douglas* is not strictly required.

Defendants respond that while they are aware Bracy is not required to plead his prima facie case, he has failed to support his otherwise bare assertions with plausible ones, such as specifically identified similarly situated individuals, citing *16630 Southfield Ltd. P'ship*, 727 F.3d 502.  In that case, plaintiff was an entity

10

owned by an individual of Iraqi descent, alleging that the defendant discriminated against it on that basis in denying a loan extension without explanation. *Id*. at 503. But there, a poor economic climate combined with plaintiff's failure to repay the original loan on time provided the defendant with an "obvious explanation" for its conduct. *Id*. at 505. Noting that "you can't assess the plausibility of an inference in a vacuum," the court found that without further factual support, plaintiff's claim was not plausible in the face of this alternative explanation. *Id*. It is in this context that the court found plaintiff's unsupported allegation of similarly situated individuals inadequate. *Id*. at 106. Here, however, Bracy has explained why his treatment lacked non-discriminatory motivation, and defendants have not provided an obvious alternate explanation for their alleged conduct.

Defendants also argue that alleging satisfactory job performance and subsequent termination, thus requiring the court to infer discriminatory motive, is not sufficient to sustain a claim, citing *Hatcher v. Hegira Programs*, 2020 WL 1083719, at *3-5 (E.D. Mich. Mar. 6, 2020) (citing cases). *Hatcher* and the similar district court cases cited therein rely on *Han v. Univ. of Dayton*, 541 F. App'x 622 (6th Cir. 2013), where an Asian-American male professor complained that he was given a poor evaluation and that subsequently his contract was not renewed, despite receiving accolades from his peers; outstanding evaluations from his students; publication in law journals; and that he was qualified for his position.

11

Here, unlike the plaintiffs in *Hatcher* and *Han*, Bracy has given a detailed factual account of the circumstances surrounding his termination, including relevant dates, and the names and titles of those involved, similarly to the plaintiff in *Swierkiewicz*. 534 U.S. at 508-09, 514. Other courts in this circuit have distinguished *Han* where, as here, the plaintiff has pled specific factual allegations creating a plausible inference of discrimination. *See Turner v. United Parcel Serv., Inc.*, No. 3:19-CV-00476, 2019 WL 5190992, at *3-4 (M.D. Tenn. Oct. 15, 2019) (case survived motion to dismiss where plaintiff explicitly alleged as a factual matter that he was treated differently than similarly situated employees without identifying them); *Min Li v. Qi Jiang*, 38 F. Supp. 3d 870, 882 (N.D. Ohio 2014) (plaintiff pled specific allegations regarding supervisor's discriminatory actions, satisfying *Twombly* and *Iqbal* requirements).

As noted above, the Supreme Court has found that at the pleading stage a plaintiff must give a defendant fair notice of the plaintiff's claims, as well as their legal grounds. *Swierkiewicz*, 534 U.S. at 514. This standard continues to apply today. *See, e.g., Keys*, 684 F.3d at 610 ("These factual allegations are at least as detailed, if not more so, than those the Supreme Court found 'easily satisfie[d] the requirements of Rule 8(a)' in *Swierkiewicz*"); *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012) ("This Circuit has continued to apply *Swierkiewicz,* and there is no reason not to do so in this instance."). Under this standard, Bracy has

12

pleaded sufficient facts to give rise to a "reasonably founded hope that the

discovery process will reveal relevant evidence" to support his claims.  *Twombly*,

550 U.S. at 559.  As such, his claims under the ELCRA should survive dismissal.

### B.  Defamation (Claim V)

#### 1.  General

To state a claim for defamation under Michigan law, a plaintiff must allege

the following:

> 1) a false and defamatory statement concerning the plaintiff, 2) an
> unprivileged communication to a third party, 3) fault amounting to at
> least negligence on the part of the publisher, and 4) either actionability
> of the statement irrespective of special harm or the existence of special
> harm caused by publication.

*Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (quoting *Rouch v. Enquirer &*

*News,* 440 Mich. 238, 251 (1992)).  There is no heightened pleading standard for

claims of defamation.  *See, e.g., State Farm Fire & Cas. Co. v. Allied & Assocs.*,

860 F. Supp. 2d 432, 447 (E.D. Mich. 2012).

#### 2.  Application

Bracy alleges that the statements made by defendant Scott to justify Bracy's

placement on a PCP, and those made to justify his ultimate termination upon

conclusion of the PCP, were false, defamatory, and unprivileged.  (ECF No. 1,

PageID.38-41).  Defendants argue that these statements are not actionable, as they

were made internally to "other employees of Consumers Energy who were part of

Plaintiff's performance review process," citing *Royal Palace Homes v. Channel 7 of Detroit*, 197 Mich. App. 48, 51 (1992) and *Ireland v. Edwards*, 230 Mich. App. 607, 614 (1998).  (ECF No. 17, PageID.163).  Neither *Royal Palace Homes* nor *Ireland* offer any analysis on the issue of whether a fellow employee is a third party for the purposes of a defamation claim.  As Bracy notes, this legal theory is at odds with defendants' next argument, that statements made to fellow employees "whose duties interest them in the same subject matter" are subject to a qualified privilege.  (ECF No. 18, PageID.193).  In their reply, defendants reassert this argument, but fail to provide any authority to support it.  Thus, the Court need not consider it further.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." (citations omitted)).

Defendants next argue that Scott is protected by his qualified privilege in communicating the allegedly defamatory statements to fellow Consumers employees who shared his interest and duty toward Bracy.  "An employer has the qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject matter," such as those responsible for hiring and firing.  *Smith v. Fergan*, 181 Mich. App. 594, 597

14

(1989) (citing *Tumbarella v. The Kroger Co*., 85 Mich. App. 482, 494 (1978)).

"Supervisory employees frequently have the need, sometimes the duty, to

comment on the behavior and work habits of their charges."  *Whiting v. Allstate*

*Ins. Co.*, 433 F. App'x 395, 398 (6th Cir. 2011).  Under Michigan law, the elements

of qualified privilege are:

> (1) good faith; (2) an interest to be upheld; (3) a statement limited in
> scope to this purpose; (4) a proper occasion; and (5) publication in a
> proper manner and to proper parties only.

*Ryniewicz*, 803 F. App'x at 867; *Gonyea v. Motor Parts Fed. Credit Union*, 192

Mich. App. 74, 79 (1991).  "Where qualified privilege exists, plaintiff, in order to

recover, must affirmatively prove actual malice on the part of the defendant."

*Ryniewicz* at 868 (quoting *Peisner v. Detroit Free Press, Inc*., 82 Mich.App. 153,

162 (1978) (per curiam) (citations omitted)).  Actual malice can be shown if the

supervisor had knowledge of the statement's falsity or recklessly disregarded the

truth.  *Id*.; *Whiting*, 433 F. App'x at 398.

    In *Ryniewicz* and *Gonyea*, the plaintiffs' claims were dismissed because the

pleadings contained only conclusory statements that the defamatory remarks were

"with the knowledge of the falsity of the statements or in reckless disregard of their

truth or falsity."  803 F. App'x at 868; 192 Mich. App. at 80.  Defendants argue

that the same is true here, noting Bracy's conclusory allegations that Scott's

statements were made "with knowledge that these were false and/or with reckless

disregard of the truth or falsity of these statements." (ECF No. 1, PageID.12, 20, 38, 40). But as previously noted, the presence of some conclusory allegations is not cause alone for dismissal. *Back v. Hall*, 537 F.3d at 558.

Here, the presence of these conclusory allegations does not detract from the clear allegations that Scott, Bracy's direct supervisor, knew that the statements he used to justify placing Bracy on a PCP and firing him were false, and were a pretext for Scott's true motive to effectuate Bracy's termination for discriminatory or other unlawful reasons. This knowledge of falsity plausibly suffices to show actual malice and could defeat Scott's defense of qualified privilege if proven. In short, the complaint contains more than bare bones allegations to support Bracy's defamation claim. As such, Bracy's defamation claim should survive the pleading stage.

### C. Tortious Interference (Claims VI and VII)

#### 1. General

Lastly, Bracy alleges that defendant Scott is liable for tortious interference with Bracy's employment and with his business relationship and expectancy with Consumers. To survive dismissal on these claims, he must allege: (1) the existence of a valid business relationship or expectancy (enforceable contract not required); (2) the knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or

termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy was disrupted. *See Saab Auto. AB v. Gen Motors Co*., 770 F.3d 436, 440 (6th Cir. 2014); *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc*., 323 F.3d 396, 404 (6th Cir. 2003).

The defendant's interference must be "an act that is per se wrongful" or "a lawful act with malice and that is unjustified in law." *Feaheny v. Caldwell*, 175 Mich. App. 291, 302 (1990). Improper conduct is a subset of wrongful acts and includes illegal, unethical, or fraudulent activities. *Id.* at 304. "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Mino v. Clio Sch. Dist.,* 255 Mich. App. 60, 78 (2003) (quoting *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.,* 217 Mich. App. 687, 698–99 (1996)).

A plaintiff can establish a claim for tortious interference with an at-will employment relationship. *Patillo v. Equitable Life Assurance Soc'y,* 199 Mich. App. 450, 457 (1993). Even though the employment relationship is at-will, the plaintiff has an interest in making sure the employer is allowed to exercise its own judgment without the illegal interference or compulsion of third parties. *Id.* It is the interference of third parties, not the "fairness" of the employment decision that is actionable. *Id.*

## 2. Application

Defendants argue that Bracy failed to allege the existence of a contract, the breach of that contract, and that Scott was not acting as an agent of Consumers when he allegedly interfered with Bracy's employment and relationship with Consumers. The first two claims are addressed easily; the complaint makes clear that Bracy was employed by Consumers on an at-will basis, and that this employment was terminated. Tortious interference with economic expectancies of an at-will contract are actionable. *Patillo*, 199 Mich. App. at 457; *Feaheny*, 175 Mich. App. at 304. As to the third point, defendants argue that Bracy has not met the "heavy burden" of showing that Scott acted outside of the scope of his authority, citing *Coleman-Nichols v. Tixon Corp.*, 203 Mich. App. 645, 657 (1994), and that Scott did not act solely for his own benefit with no benefit to Consumers, citing *Reed v. Mich Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993). It is true that Bracy will have to show that Scott was acting as a third party in interfering with Bracy's employment, but both *Coleman-Nichols* and *Reed* were decided at the Michigan equivalent of the summary judgment stage under M.C.R. § 2.116(c)(10), where the plaintiffs were required to show no genuine issue of any material fact. By contrast, on a motion to dismiss, the court looks only to the sufficiency of the complaint. Defendants have failed to show that Bracy's allegations, including Scott's discriminatory and unlawful motivations for

interference with Bracy's employment, are insufficient.  Bracy has therefore alleged plausible claims for tortious interference.

### V.  Conclusion

Accordingly, for the reasons stated above, the undersigned recommends that defendants' motion to dismiss counts II-VII of the complaint (ECF No. 17) be DENIED.


Dated: December 7, 2020                         s/Kimberly G. Altman
Detroit, Michigan                               KIMBERLY G. ALTMAN
                                                United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

19

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on December 7, 2020.

s/Marie E. Verlinde<br>
MARIE E. VERLINDE<br>
Case Manager