UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN BRACY,

                Plaintiff,                        Case No. 20-10969

v.                                        HON. MARK A. GOLDSMITH

CONSUMERS ENERGY COMPANY, et al.,

                Defendants.

_____/

**OPINION & ORDER
(1) ACCEPTING THE RECOMMENDATION CONTAINED IN
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 74), (2)
OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 75), AND (3) GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 51)**

This matter is before the Court on the Report & Recommendation (R&R) of Magistrate Judge

Kimberly Altman (Dkt. 74). In the R&R, the magistrate judge recommends that the Court grant

Defendants' motion for summary judgment (Dkt. 51). Plaintiff Brian Bracy filed objections to the

R&R (Dkt. 75). For the reasons that follow, the Court overrules Bracy's objections and adopts the

recommendation contained in the magistrate judge's R&R to grant Defendants' motion for

summary judgment.[1]

Bracy brings this unlawful-termination action against Defendants Consumers Energy

Company, his former employer, and Richard Scott, his former supervisor. Compl. (Dkt. 1). He

asserts claims under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. L. §

37.2202(1)(a), and the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

---

[1] Because oral argument will not aid the Court's decisional process, the issues will be decided
based on the parties' briefing and the R&R. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).
In addition to the motion for summary judgment, the briefing for the motion includes Bracy's
response (Dkt. 57) and Defendants' reply (Dkt. 61). In addition to Bracy's objections, the briefing
for the objections includes Defendants' response (Dkt. 76) and Bracy's reply (Dkt. 77).

§ 1140.  In examining Bracy's objections, the Court addresses four issues: (i) whether Bracy has provided direct evidence of age discrimination in support of his ELCRA claim; (ii) whether Bracy has provided direct or circumstantial evidence that Defendants terminated him with the intent to interfere with his attainment of ERISA-protected benefits; (iii) whether Bracy has stated a prima facie case of age, race, or sex discrimination; and (iv) whether Bracy has shown the Defendants' legitimate, nondiscriminatory reason for his termination is a pretext for unlawful discrimination.

## I. BACKGROUND

Bracy is a white male who worked for Consumers from January 11, 1993 until he was terminated on November 19, 2019 at the age of 52.  Corrected Bracy Dep. at 66 (Dkt. 70-1); Termination Letter (Dkt. 51-24).  In 2013, Bracy became a Senior Tech Analyst Lead in the Electric Tools, Equipment, and Work Methods and Procedures Department, and he held this position until his termination.  Corrected Bracy Dep. at 98.  Bracy describes his role as the "lead employee for the electric tool department."  Id. at 99.  His duties included supervising employees, managing safety compliance programs related to electric tools, administering an electric tool repair program, maintaining customer contacts, responding to tool safety issues, and collaborating with tool and union employees.  Id. at 99–101, 108.  In addition, his responsibilities involved participating on teams or committees and managing the tools budget by "ensuring appropriate spending and tracking of the O & M and capital tools budget and energy operations."  Id. at 101, 108.  Scott became Bracy's supervisor in 2018.  Id. at 109.  Scott's supervisor was Brad Rickert, who reported to Guy Packard.  Scott Dep. at 154 (Dkt. 51-4); Corrected Bracy Dep. at 118.

In February 2018, Bracy received from Scott a performance evaluation (PEFD) that evaluated his performance during the 2017 calendar year.  2017 PEFD (Dkt. 51-5).  This evaluation incorporated feedback from Bracy's previous supervisor.  See March 2019 Mtg. Tr. at 2 (Dkt. 51-

10).  Scott provided positive comments regarding Bracy's work, and the PEFD rated Bracy overall as "Effective."  Id. at PageID.1000.  It also stated, however, that Bracy did not meet two "Periodic Targets": "[e]stablish a tool process satisfaction survey and achieve a score of 90% satisfaction by YE [year end] 2017" and "[e]nsure appropriate charges for field tools in 2017 to meet the capital and O&M [Operations & Maintenance] budget +/-5%."  Id. at PageID.993, 995.  For the tool process satisfaction survey, Scott suggested that Bracy "roll this over to [his] 2018 goals to accomplish the creation of the automated survey."  Id. at PageID.993.  For the field tools, Scott noted that it "[l]ooks like there is some opportunity here."  Id. at PageID.995.  Scott also stated on the evaluation that he and Bracy would work together to address challenges.  Id. at 1001.  Bracy does not allege that the 2017 PEFD was discriminatory.  Corrected Bracy Dep. at 133.

Later in 2018, Scott experienced performance issues with Bracy.  These issues include the following.  In April 2018, Scott emailed Bracy because Bracy did not send him budget information before Scott's meeting with Packard.  April 2018 Email Chain (Dkt. 51-6).  Scott stated that it "did not go well for [Scott] or [Bracy] that [Scott] did not have [the budget information] in that meeting."  Id.  Scott gave Bracy another deadline by which to send the information, with "no exceptions."  Id.  In his response to Scott's email, Bracy apologized and stated that he "misunderstood" the date by which Scott needed the information.  Id.

In addition, Scott documented that in July 2018, he and Bracy had an informal feedback session in which they discussed the fact that lifting slings were not tagged for 2018 and that Bracy needed to develop a plan so that this issue did not recur in 2019.  2018 PEDF at PageID.1013 (Dkt. 51-7).  During a second informal feedback session in October 2018, Bracy had not developed a plan, and Scott documented that it was an expectation that the plan would be completed and implemented in early 2019.  Id.

3

In October 2018, a Zone Manager at Consumers emailed Bracy and Scott because Bracy had not timely submitted a capital tool budget to Field Leaders and Zone Managers.  October 2018 Email Chain (Dkt. 51-8).  The Zone Manager stated, "I need my capital tool budget.  It is now mid-October and I have not received this information at all this year, and this is unacceptable. Please send today so I don't need to escalate."  Id.  Bracy responded and apologized, stating that he was doing the best he could with existing resources.  Id.  At the second informal feedback session in October, Bracy and Scott discussed Bracy's failure to send budget information to Field Leaders and Zone Managers.  2018 PEDF at PageID.1013.  Scott noted that Bracy stated he needed additional resources, and Scott offered the assistance of an employee so that Bracy could prepare a business case for that need.  Id.

In January 2019, Bracy received a PEFD that evaluated his performance during the 2018 calendar year.  Id. at PageID.1007.  As in 2017, he received an overall rating of "Effective."  Id. However, his performance ratio decreased 15 points—from 105 to 90—from the previous year's PEFD.  March 2019 Mtg. Tr. at 2.  The Effective range encompasses ratios of 85 to 114.  Mot. at 4.  The PEFD noted the informal feedback sessions with Bracy in July 2018 and October 2018. 2018 PEFD at PageID.1013.  It also identified the following as "Development Areas": (i) earning customers' business 24/7; (ii) crossing the finish line together; (iii) putting points on the board; and (iv) leaving it better than we found it.  Id. at PageID.1009–1010.

In March 2019, Bracy met with Scott to review his 2018 PEFD.  Corrected Bracy Dep. at 140. Bracy recorded the meeting without Scott's knowledge because he "felt vulnerable with respect to how [Scott] was treating him" and felt that Scott "was engaging in something that could potentially affect . . . [Bracy's] job."  Id. at 141.  During the meeting, Scott and Bracy discussed Bracy's performance issues.  Scott informed Bracy that Packard was "livid" about the fact that lifting slings

were not tagged for 2018.  March 2019 Mtg. Tr. at 3.  Bracy stated that he did not know that Packard was livid.  Id.  Scott also recounted a conversation Scott had with Bracy in which Bracy asked Scott if he would lose his job if he did not meet a June 30 deadline for tagging slings.  Id. Scott responded that no one told Bracy he would lose his job but that Bracy should not risk missing the deadline and that Scott could not guarantee what would happen if he did miss the deadline.  Id. Scott stated that, fortunately, Bracy met the deadline.  Id.  Further, Scott informed Bracy that William Krieger, a co-leader of the Field Operations Support (FOS) Team, had informed Scott that Bracy had not been to any weekly FOS Team meetings all year.  Id. at 13.  Scott told Bracy that Bracy was a "central component" of the FOS team.  Id. at 14.  Scott also told Bracy that he was there to support Bracy and that, if something was not working, Bracy should make changes.  Id. at 19.  To try to explain his actions, Bracy gave extensive responses to the issues that Scott raised. Bracy mentioned that some technology needed to be improved and that he needed resources and financing.  Id. at 20.  Scott told Bracy that he could not blame failures on his team.  Id. at 22.

After the March 2019 meeting, employees experienced additional performance issues with Bracy.  These included Bracy sending budget information to Field Leaders and Zone Managers after a deadline that Scott set; Bracy's lack of attendance at weekly FOS meetings, which, according to Krieger, hindered the productivity of the meetings; Bracy's failure to prepare another tools employee who later replaced Bracy at the meetings, Collin Thelen, for the responsibilities of this role; and Bracy's failure to meet deadlines for completing a New Tool Referral Process.  April 2019 Email Chain (Dkt. 51-11); FOS Team Mtg. Summary (Dkt. 51-12); Krieger Decl. ¶¶ 7, 12 (Dkt. 51-13); Corrected Bracy Dep. at 177; Scott Dep. at 151; NTRP Email Chain (Dkt. 51-15).

On July 29, 2019, Scott placed Bracy on a 90-day Performance Correction Plan (PCP).  PCP (Dkt. 51-16).  The PCP set five goals.  First, Bracy would return to the FOS Team as the assigned

Tools member and actively contribute to the FOS Team.  Id. at PageID.1056.  Second, Bracy would complete "the total go live new Tool Referral Process" within 30 days.  Id.  Third, Bracy would create a monthly meeting schedule for the Electric Operations Tools and Equipment Reference Manual (TERM) team, hold meetings, send an agenda before the meeting, and record meeting minutes.  Id. at PageID.1058.  Fourth, Bracy would update and maintain headquarter budgets spreadsheets each month and, within 60 days, develop a communication plan for letting Zone Managers and Field Leaders know their spend status.  Id.  Fifth, Bracy would create and submit a draft Mission and Vision statement for his team within 60 days.  Id. at PageID.1059.  On the PCP, Scott confirmed that he discussed Bracy's acknowledgement that Bracy's failure to successfully complete the PCP could result in discharge.  Id. at PageID.1062.  Scott and Bracy held biweekly meetings to discuss Bracy's progress.  Corrected Bracy Dep. at 199.

On August 5, 2019, Bracy submitted a Request for Dispute Resolution.  PCP Appeal at PageID.1691 (Dkt. 57-1).  He stated in the request that "[w]hile I do agree that the items listed by my supervisor [on the PCP] need to be completed[,] the information provided is misleading and does not tell the complete story."  Id.  Bracy attached to his request what he identified as "[m]isleading or [i]ncomplete information in regar[d] to PIP [s]tatements," which described actions that he took related to the PCP goals and listed other tasks that he performed and accomplishments.  Id. at PageID.1692.  Bracy also stated: "I do not agree that I haven't been making an effort to accomplish [the tasks in the PCP]" and "I disagree that my achievements YTD [year to date] warrant a PIP."  Id. at PageID.1693.

According to the PCP, Bracy did not meet goals one, two, and four.  It states that Bracy did not meet goal one—attend and contribute to the FOS Team meetings—because the FOS Team requested that Bracy not return, and Bracy made no effort toward reconciliation.  PCP at

6

PageID.1056–1057.  Bracy contends that he could not meet this goal because Scott and Rickert permanently replaced him with Thelen at the meetings.  Corrected Bracy Dep. at 178.  Scott maintains that Thelen was not a permanent replacement, and Consumers maintains that, even if Thelen were a permanent replacement, Scott directed Bracy to attend the meetings as part of the PCP.  Scott Dep. at 153; Mot. at 8.  Bracy requested that this goal be removed from the PCP because the FOS team requested that he not attend the weekly meetings.  8/14/19 Mtg. Tr. at PageID.1076, 1083 (Dkt. 51-20).  Scott declined to remove this goal.  Scott's bi-weekly meeting notes initially acknowledged that Bracy would be unable to meet this goal, given the FOS Teams' request.  8/14/19 Bi-Weekly Meeting Notes at PageID.1111 (Dkt. 51-21).  The notes later stated that the reason for the request—Bracy's lack of positive participation at the meeting—was "the exact performance this plan is seeking to correct."  8/29/19 Bi-Weekly Meeting Notes at PageID.1113 (Dkt. 51-22).  Bracy stated that, as an alternative means of supporting the FOS team, he set up bi-weekly meetings with Krieger.  Corrected Bracy Dep. at 209.  But Scott did not see any meetings scheduled on Bracy's calendar.  8/29/19 Bi-Weekly Meeting Notes at PageID.1113.

The PCP states that Bracy did not meet goal two because he completed "the total go live new Tool Referral Process" by October 7, rather than August 27.  PCP at PageID.1057–1058.  Bracy confirmed that the process went live on October 7.  Corrected Bracy Dep. at 213.

The PCP states that Bracy did not meet goal four because he did not send two months of budget information spreadsheets by September 27.  PCP at PageID.1059.  Bracy confirmed he did not send out the first budget spreadsheet until September 16.  Corrected Bracy Dep. at 218; Bracy PCP Notes (Dkt. 51-23).  As a result, 20 out of 29 headquarters exceeded their individual budget spends for 2019.  Corrected Bracy Dep. at 219.

On November 19, 2019, Consumers terminated Bracy.  Termination Letter.  The letter he received stated that because Bracy was an at-will employee, Consumers could terminate him at any time with or without cause.  Id.

Bracy filed this action, alleging that Defendants terminated his employment to prevent him from receiving employee welfare benefits to which he would have been entitled, in violation of ERISA, and discriminated against him on the basis of age, race, and gender, in violation of the ELCRA.  Compl. ¶¶ 65–95.  He also alleges that Scott published defamatory statements about him in providing his rationale for the PCP and obtaining the approval of other Consumers employees for the PCP.  Id. ¶¶ 96–107.  And Bracy brings claims of tortious interference with a contract and tortious interference with a business relationship or expectancy.  Id. ¶¶ 108–121.

Defendants filed a motion for summary judgment as to all of Bracy's claims.  Magistrate Judge Stafford recommends granting summary judgment in favor of Defendants for all claims.  R&R at 36.

## II. ANALYSIS[2]

The Court reviews de novo any portion of the R&R to which a specific objection has been made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others

---

[2] In assessing whether Defendants are entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

will not preserve all the objections a party may have.") (punctuation modified). Absent a specific objection, the issue is waived. Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991). Additionally, any issues raised for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

Bracy filed objections to the magistrate judge's recommendation as to his ERISA and ELCRA claims. Obj. at 1. He does not object to the magistrate judge's recommendation that the Court grant Defendants summary judgment as to his defamation and tortious interference claims. Id. at 1 n.1. Bracy makes four objections to the R&R. The Court addresses each in turn.

## A. Objection One

Bracy contends that the magistrate judge erred when she found that Bracy did not present direct evidence of age discrimination. Id. at 3–9.

Proof of discriminatory treatment in violation of ELCRA may be established by direct or circumstantial evidence. Sniecinski v. Blue Cross & Blue Shield of Mich., 666 N.W.2d 186, 192 (Mich. 2003). When examining claims brought under ELCRA, the Michigan Supreme Court has "cited with approval" the United States Court of Appeals for the Sixth Circuit's definition of direct evidence. Id.; see also Harrison v. Olde Financial Corp., 572 N.W.2d 679, 683 (Mich. Ct. App. 1997) (explaining that, "when direct evidence of discrimination is involved, we believe that federal case law provides appropriate guidance for analyzing discrimination claims arising under the Michigan Civil Rights Act."). Direct evidence is "'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Hazle v. Ford Motor Co., 628 N.W.2d 515, 520 (Mich. 2001) (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). Consistent with this definition, "direct evidence of discrimination does not require a factfinder to draw any

inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). Thus, direct evidence "must prove not only discriminatory animus, but also that the employer actually acted on that animus." Johnson v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., 502 F. App'x 523, 534 (6th Cir. 2012).

Bracy points to a document that he says constitutes direct evidence of age discrimination. This document consists of a copy of Bracy's PCP, a "Write up on [Bracy's] PCP," and Bracy's 2019 performance goals. Sealed Exhibit (Dkt. 50). The document lists Bracy's age (52) at the time of the alleged discrimination, his tenure (26 years), his then-current performance ratio, and the fact that he has no current discipline on file. Id.[3] Specifically, it recites "52 years of age[,] Tenure- 26 years[,] No current discipline on file[,] Current performance ratio- 90 (effective)[, and] performance category for 2020- under performing." Id. Bracy contends that Jennifer Luczak, a senior human resources consultant at Consumers, testified that the document was "generated for purposes of and reviewed and considered during deliberations pertaining to the 'collective decision' to terminate [Bracy's] employment"—a decision made with the legal department and another human resources employee. Obj. at 5 (quoting Luczak Dep. at 151) (Dkt. 48-3)). Bracy asserts that the document listing his age and current tenure, and consideration of his age and tenure in conjunction with the decision to terminate his employment, is direct evidence of discrimination.

---

[3] A member of Consumers' in-house counsel, Robert Farr, sent this document to Bracy's counsel, Raymond Carey, before this action was filed. 2/3/20 Email from Farr to Carey (Dkt. 49-4). Defendants argued that the document was privileged and inadvertently disclosed, and they filed a motion to compel its return (Dkt. 48). The magistrate judge issued an R&R recommending that the motion be denied (Dkt. 55). The Court adopted the recommendation and denied Defendants' motion to compel. 11/5/21 Order (Dkt. 66).

Id. at 7.  Bracy maintains that there is no legitimate reason to include this information on personnel records relating to his termination.  Id.

In response, Defendants argue that Bracy inaccurately characterizes Luczak's testimony, which does not indicate that the document was associated with the "collective" deliberations regarding Bracy's termination.  Resp. at 6.  But even if the document were associated with and considered during such deliberations, that does not indicate that Consumers considered discriminatory criteria in conjunction with its decision to terminate Bracy or that it acted on discriminatory criteria.  The evidence that Bracy has put forth does not constitute direct evidence of age discrimination because its relevance is provided by inference.  Neither a document listing Bracy's age nor the review of this document during a decision about Bracy's termination compels the conclusion that Defendants' decision to terminate Bracy's employment was motivated in part by Bracy's age—or even that Defendants took his age into account during the decision.  The Court would need to draw inferences to make such a conclusion.  See Johnson, 502 F. App'x at 534 (finding that a document did not constitute direct evidence "because it would require multiple inferences to reach a finding of discrimination"); Johnson, 319 F.3d at 865 ("The need to draw such inferences prevents these remarks from constituting direct evidence of discrimination.").

Bracy cites several cases in support of his argument that the age and tenure information on the document and Luczak's testimony about a "collective" decision are sufficient to constitute direct evidence of age discrimination.  However, these cases involved a corporate decisionmaker's express statement of a desire to remove employees in the protected group or an express statement directly referencing a protected characteristic as a reason for the employee's termination.[4]  Bracy

_____

[4] See Howley v. Fed. Express Corp., 682 F. App'x 439, 442–444 (6th Cir. 2017) (finding that an inference could be drawn that the plaintiff was terminated based on his age when his manager asked how much money he made and expressed surprise at his length of employment; asked

did not present evidence that anyone connected with the decision to terminate him made any such express age-based comments. Therefore, these cases are distinguishable.[5]

Bracy also argues that "[g]eneration and consideration of a document disclosing an employee's age, race, gender, and/or other protected characteristics in conjunction with employment related decisions is a violation of M.C.L.A. § 37.2206(2)(a)-(c) and consists of direct evidence of unlawful discrimination in violation of the ELCRA." However, the statute does not state this, and Bracy cites no other authority as support. The Court need not develop this argument for him. See McPherson v. Kelsey, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory

---

employees about their retirement plans and "why they were still working"; expressed concern that employees were "being old and not keeping up with technology, the fact that they were . . .still around and should have retired"; disciplined the employee for insubstantial issues; and tried to reassign the employee to an alternative position requiring him to take a 50 percent pay cut); Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 572 (6th Cir. 2003) (finding direct evidence that age discrimination was a motivating factor in plaintiff's demotion when a decisionmaker made comments that "indicated a belief that a person's capabilities as a store manager diminish with age," several of which were directed at the plaintiff when he was being demoted); Jacklyn, 176 F.3d at 926 (finding direct evidence when a superior stated that he did not want any "skirts" working for him); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 379–380 (6th Cir. 1993) (finding plaintiff presented direct evidence of age discrimination when a union leader and the union leader's supporters stated in reference to the plaintiff that "the old man ought to retire" and continuously made remarks that people with thirty years' tenure should "get out" and be replaced by younger employees ); DeBrow v. Century 21 Great Lakes, Inc., 620 N.W. 2d 836, 838 (Mich. 2001) (finding plaintiff presented direct evidence when, during the conversation in which the plaintiff's superior informed the plaintiff that he was being fired, the superior told him that he was "getting too old for this shit"); Matras v. Amoco Oil Co., 385 N.W.2d 586, 588, 592–593 (Mich. 1986) (finding that employer discriminated on the basis of age when it divided its employees by age, sex, and race; it terminated employees in each group to maintain fixed percentages for each group; and the plaintiff was told that he was discharged because he was "low man in the over age 40 group").

[5] Bracy also objects to the magistrate judge's reliance on Iyengar v. Mercy Mem'l Hosp. Corp., No. 08-10778, 2009 WL 2840509, at *3 (E.D. Mich. Aug. 31, 2009). Obj. at 7–8. He states that the facts are distinguishable. Id. at 7. Even if the facts of Iyengar are distinguishable, the magistrate judge did not rely solely on Iyengar in finding that Bracy did not present direct evidence of age discrimination, and the Court agrees with the magistrate judge's conclusion that Bracy has not presented direct evidence of age discrimination.

manner, unaccompanied by some effort at developed argumentation, are deemed waived.")
(punctuation modified).

Therefore, Bracy is wrong in contending that the magistrate judge erred in rejecting his direct
evidence argument.  His first objection is overruled.

### B.  Objection Two

Bracy contends that the magistrate judge erred when she found that Bracy did not present
evidence sufficient to create a material factual dispute as to whether Defendants terminated his
employment with the specific intent of interfering with his entitlement to ERISA-protected
benefits.  Obj. at 9–12.  He states that he has provided sufficient direct and circumstantial evidence
of intent.  Id.

ERISA prohibits employers from terminating or otherwise discriminating against employees
who choose to exercise a benefit to which they are entitled under their benefit plan.  29 U.S.C. §
1140 (ERISA § 510).  The statute states that it is "unlawful for any person to discharge . . . or
discriminate against a participant or beneficiary for exercising any right to which he is entitled
under the provisions of an employee benefit plan . . . or for the purpose of interfering with the
attainment of any right to which such participant may become entitled under the plan."  Id.

The Sixth Circuit recognizes two types of claims under § 510: (i) "a retaliation claim," in which
"adverse action is taken because a participant availed [himself or herself] of an ERISA right" and
(ii) "an interference claim," in which "adverse action is taken as interference with the attainment
of a right under ERISA."  Hamilton v. Starcom Mediavest Grp., Inc., 522 F.3d 623, 627–628 (6th
Cir. 2008) (punctuation modified).  Bracy asserts an interference claim because he alleges that
Defendants terminated him to interfere with his rights or attainment of rights under Consumers'
various retirement, health, and other benefit plans.  Compl. ¶ 30.

13

To state a claim under § 510, the plaintiff must show that the employer had a specific intent to violate ERISA. Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997). The Sixth Circuit has stated that the plaintiff need not show that the employer's sole purpose in discharging him or her was to interfere with entitlement to benefits, but the plaintiff must show that it was "a motivating factor" in the decision. Shahid v. Ford Motor Co., 76 F.3d 1404, 1411 (6th Cir. 1996). A plaintiff can demonstrate intent through either direct or circumstantial evidence. Schweitzer v. Teamsters Local 100, 413 F.3d 533, 537 (6th Cir. 2005).

### 1. Direct Evidence

Bracy asserts that he has presented sufficient direct evidence that Defendants terminated him with the intent to interfere with his enhanced pension rights. Obj. 10–11. The evidence he cites includes: (i) his personnel records; (ii) Luczak's testimony about the "collective employment termination decision"; and (iii) evidence that Bracy's termination permitted Consumers to replace Bracy with another employee, Jeremy Adcock, who was ineligible for the benefits that Bracy was eligible for and that Defendants would have been obligated to provide Bracy had he remained employed until he retired. Id.

While Bracy cites the above evidence, he does not explain how it shows Defendants' specific intent. Therefore, his argument may be deemed waived. See McPherson, 125 F.3d at 995. But even considering his objection, the Court finds that Bracy has not presented direct evidence that Defendants had a specific intent to interfere with his right to attain ERISA-protected benefits. The document consisting of a "Write Up" of Bracy's PCP and listing his age and tenure at the top does not say anything about his eligibility for benefits. And nothing Bracy relies on would require the conclusion that, when Consumers terminated him, it had the purpose of interfering with his receipt of future benefits under Consumers' benefit plans. In addition, the Sixth Circuit has suggested

14

that only the alleged statements of a supervisor who has the authority to terminate the employee may constitute direct evidence of an intent to economize on benefits. Smith v. Hinkle Mfg., Inc., 36 F. App'x 825, 827–829 (6th Cir. 2002) (determining that, because an accounting supervisor did not have the authority to terminate the plaintiff, the supervisor's statement to the plaintiff that "families like hers were the cause of [the employer's] rising insurance costs and were a drain on the company" was not direct evidence of the employer's intent). Bracy states that he never spoke with Scott about his retirement or benefits. Corrected Bracy Dep. at 255. And he did not state that anyone with authority to terminate him made comments about his benefits.

### 2. Circumstantial Evidence

Bracy contends that the same evidence mentioned above is sufficient circumstantial evidence to demonstrate a material factual dispute as to whether Defendants had the intent to interfere with his benefits when they terminated him.

In the absence of direct evidence of intent, a plaintiff bringing a claim under § 510 must state a prima facie case by showing that there was "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992) (punctuation modified). In addition, the plaintiff must show "a causal link between pension benefits and the adverse employment decision." Id. at 1044 (punctuation modified). In particular, "to survive defendants' motion for summary judgment, [a] plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid pension liability was a determining factor in [the] plaintiff's discharge." Id. (punctuation modified).

The Court agrees with the magistrate judge that Bracy has not presented evidence from which a reasonable jury could infer that Defendants terminated Bracy to avoid having to provide him

with ERISA-protected benefits.  The evidence that Bracy cites does not show that the employee who replaced Bracy was ineligible for benefits to which Bracy would have been entitled.  The record shows that Bracy could have been eligible for retirement benefits at age 55—three years after he was discharged.  Bracy Benefits/Pension Information (Dkt. 57-1).  The Sixth Circuit has found that a close temporal proximity between an employee's termination and an event signaling increased costs to a benefit program can support an inference that an employer acted with the intent of interfering with future benefits.  See, e.g., Smith, 36 F. App'x at 829 (finding that plaintiff established prima facie case when she showed that she was discharged two weeks after her supervisor learned of her son's medical diagnosis, which would have imposed substantial costs on the employer's insurer).  But the Sixth Circuit has not permitted plaintiffs to make out a prima facie case by pointing to a temporal gap of the length present here "except when there are additional, highly probative facts that suggest intentional discrimination." Petrus v. Lucent Tech., Inc., 102 F. App'x 969, 971 (6th Cir. 2004).  There are no such facts here.  And a plaintiff does not state a prima facie case of § 510 interference if the plaintiff demonstrates "only that he lost the opportunity to accrue new benefits." Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1113 (6th Cir. 2001). "Otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510." Id.

Bracy states that his evidence is similar to the evidence that the court in Humphreys and Pennington v. Western Atlas, Inc., 202 F.3d 902, 908 (6th Cir. 2000) found sufficient to state a prima facie case.  But both of those cases are distinguishable.  In Humphreys, the court held that the plaintiff had satisfied the "bare minimum" of a prima facie case by showing that his employer discharged him within two months of his pension vesting date and that this would have cost the company a substantial amount.  966 F.2d at 1043–1044.  It determined that "the proximity to

16

vesting provides at least some inference of intentional, prohibited activity." Id. By contrast, Bracy was terminated roughly three years before his retirement benefits vested, and he has not presented evidence that his benefits would have cost Consumers a substantial amount.

In Pennington, the plaintiffs, who were discharged four to five years before their benefits would have vested, presented evidence that their employer created a spreadsheet that sorted employee information by name, birth date, date of hire, whether the employee smoked, and benefit program information. 202 F.3d at 905. In addition, before making decisions about whom to terminate, decisionmakers stated that "they wanted to reduce salaries and medical costs and that they were not concerned about lawsuits." Id. at 908. And the plaintiffs' expert witness testified that "the pattern of terminations . . . was not age neutral because more people age 50 and over were terminated than would be expected in a random process." Id. Therefore, strong circumstantial evidence supported the conclusion that the employer based its termination decisions in part upon the employer's future liability for ERISA benefits. By contrast, Bracy has not presented any evidence that Consumers—in making termination decisions—had a stated goal of reducing costs or that Consumers' pattern of terminations was not age neutral.

Because Bracy has not presented direct or circumstantial evidence that Defendants terminated his employment with the specific intent to interfere with his right to attain ERISA benefits and has not established a prima facie case, Defendants are entitled to summary judgment on his ERISA claim. Bracy's second objection is, therefore, overruled.

## C. Objection Three

Bracy asserts that the magistrate judge erred when she found that Bracy did not establish the fourth element of a prima facie case of discrimination under ELCRA: that the adverse employment

action occurred under circumstances giving rise to an inference of unlawful discrimination. Obj. at 12–17.

Bracy alleges age, race, and sex discrimination in violation of ELCRA.  The statute states that an employer shall not do any of the following:

> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Mich. Comp. L. § 37.2202(1)(a).

For his race and sex discrimination claims, Bracy relies on circumstantial evidence, which constitutes "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009).  As discussed above, Bracy has not offered direct evidence of age discrimination, so he must also present circumstantial evidence for his age discrimination claim.

### 1. Prima Facie Case

When a plaintiff relies on circumstantial evidence to support an inference of discrimination, Michigan courts apply the McDonnell Douglas burden-shifting framework.  Hazle, 628 N.W.2d at 520–521 (explaining that Michigan courts have adopted the McDonnell Douglas approach for use in race, age, and gender discrimination cases that are brought under ELCRA and that rely on circumstantial evidence of discriminatory animus).  Under this framework, the plaintiff must state a prima facie case of discrimination, which gives rise to a presumption of discrimination.  Lytle v. Malady, 579 N.W.2d 906, 914–915 (Mich. 1998).  The burden then shifts to the defendant to rebut the presumption by offering a "legitimate, nondiscriminatory reason" for the plaintiff's

18

termination.  Id. at 915.  Then, the plaintiff must show that there is a triable issue that the employer's reason is a mere pretext for discrimination.  Id. at 916.

To establish a prima facie case of discrimination, a plaintiff must prove by a preponderance of the evidence that he or she (i) was a member of the protected class; (ii) suffered an adverse employment action; (iii) was qualified for the position; and (iv) was discharged under circumstances that give rise to an inference of unlawful discrimination.  Id. at 914.

Bracy contends that the magistrate judge erred when she stated that, to establish that his termination occurred under circumstances giving rise to an inference of unlawful discrimination, Bracy must show either that he was replaced by someone outside of the protected class—meaning, someone younger, non-white, and female—or alternatively, or that he was treated less favorably than a similarly situated person who engaged in like conduct.  Obj. at 14.

But Michigan courts and federal precedent, which Michigan courts look to for guidance in examining discrimination claims under ELCRA, state that a plaintiff can establish the fourth element of a prima facie case by showing that the plaintiff was replaced by someone outside the protected class or that others similarly situated and outside the protected class were unaffected by the employer's adverse conduct.  See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); Hecht v. Nat'l Heritage Acads., 886 N.W. 2d 135, 147 (Mich. 2016); Town v. Mich. Bell Tel. Co., 568 N.W.2d 64, 68 (Mich. 1997); Matras, 385 N.W.2d at 589.

The Michigan Supreme Court has stated that these are not the only two ways in which a plaintiff may meet the ultimate burden of demonstrating circumstances from which a factfinder could conclude that the defendant discriminated against the plaintiff.  Hecht, 886 N.W.2d at 147–148.  It has explained that "there remain multiple ways of proving the ultimate question of discrimination in a circumstantial evidence case."  Id. at 147.

But the cases falling outside the "common pattern" that the magistrate judge referenced typically involve direct evidence of discrimination or express comments about an employee's protected characteristic. DeBrow, 620 N.W.2d at 838. The cases that Bracy cites in support of his argument that he need not show that he was treated differently than similarly situated employees confirm this. See Blair v. Henry Filters, 505 F.3d 517, 530 (6th Cir. 2007) (finding sufficient circumstantial evidence to create a genuine issue of material fact that the plaintiff was terminated because of his age when the plaintiff's supervisor repeatedly mocked his age, removed him from an account because of his age, and told others that he wanted younger employees); Wexler, 317 F.3d at 570–572 (finding direct evidence that age discrimination was a motivating factor in the plaintiff's demotion when a decisionmaker made comments that "indicated a belief that a person's capabilities as a store manager diminish with age" and repeatedly referred to the youth of the plaintiff's replacement); Howley, 682 F. App'x at 442–444 (finding that an inference could be drawn that the plaintiff was terminated based on his age when his manager made statements about the plaintiff's age, tenure, and retirement; disciplined the employee for insubstantial issues; and tried to reassign the employee to an alternative position requiring him to take a 50 percent pay cut); DeBrow, 620 N.W.2d at 836 (Mich. 2001) (finding the plaintiff presented direct evidence of discrimination when, during the conversation in which his superior informed him that he was being fired, the superior told him that he was "getting too old for this shit").[6] Bracy did not state that

---

[6] Bracy also cites Willard v. Huntington Ford, 952 F.3d 795, 808 (6th Cir. 2020) in support of his argument that he does not need to identify a particular comparator to establish the fourth element of a prima facie case. Obj. at 14. But Willard involved factual circumstances that are not present here. There, the court stated that "although we typically compare a plaintiff to specific non-protected employees to determine whether the other employee is similarly situated in all relevant respects," the plaintiff did not need to identify a particular comparator because all employees were already similarly situated in regard to the particular management practice at issue. Willard, 952 F.3d at 809–810. Bracy does not contend that all employees were similarly situated because they dealt with the same manager in the same manner. Moreover, the court in Willard found that the

anyone at Consumers ever made comments about his age, race, or sex, Corrected Bracy Dep. at 257–258, and he relies on circumstantial evidence for his ELCRA claims.

Bracy also contends that a plaintiff can establish the fourth element of a prima facie case through evidence showing a defendant's failure to abide by internal policies combined with evidence that the defendant followed those policies for people outside the protected class.  Obj. at 14–15.  But the authority he relies on does not support this contention.  See Felder v. Nortel Networks Corp., 187 F. App'x 586, 595 (6th Cir. 2006) (explaining that "not all failures to follow company procedure are necessarily evidence of discrimination" and that "failure to follow internal procedures, standing alone, is insufficient to create a permissible inference of discriminatory intent"); Durante v. Ohio Civil Rights Comm'n, 902 F.2d 1568 (6th Cir. 1990) (finding that the district court did not err in failing to address whether the plaintiff was subjected to discriminatory discipline in part because implicit in the holding that her dismissal was not discriminatory was the finding that the disciplinary steps that resulted in her dismissal were not discriminatory); Hecht, 886 N.W.2d at 147–148 (finding that a reasonable jury could infer that the plaintiff was fired because of his race when a higher-level employee invoked race as a distinction between the treatment of plaintiff's behavior and treatment of similar behavior by others).

Moreover, as the magistrate judge explained, Consumers did not fail to abide by an internal policy.  Bracy states that Consumers violated its policies when it placed Bracy on a PCP after he received a PEFD rating of "Effective" in 2018 because, under Consumers' policies, an employee who received an "Effective" PEFD rating cannot be subject to a PCP.  Obj. at 15.  But according

---

plaintiff established the fourth element of a prima facie case because he pointed to evidence that his former employer replaced him with a younger employee after he was discharged and that younger employees were treated better.  Id. at 808.  Bracy—a white male—was replaced by an older, white, male employee.  Consumers Supp. Answer to Interr. at PageID.1148 (Dkt. 51-34).

to Consumers' Performance Correction Plan Leader Consulting Guide, the use of a PCP is not limited to certain PEFD ratings.  The guide states that "Performance Correction Plans should be implemented when an employee's overall performance rating is 'Under Contributing' or 'Moderate,' or if the supervisor determines the employee's current performance requires immediate improvement after the supervisor has held prior discussions with the employee and has communicated expectations."  PCP Leader Consulting Guide at PageID.1067 (Dkt. 51-17).  Scott determined that Bracy's performance warranted a PCP, and Scott held prior discussions and communicated expectations for Bracy's performance through informal feedback sessions and the March 2019 meeting.  Further, Rebecca Kosnik, Equal Employment Opportunity (EEO) and Employee Relations Director of Consumers Energy, testified that, as in Bracy's situation, "any time in the year regardless of how one was rated in the PEFD and what the PEFD said, if someone's performance has declined or ther[e] [have] been incidents that have come to light since the PEFD[,] a PCP can be issued."  Kosnik Dep. at PageID.980 (Dkt. 51-3).  Kosnik also testified that, if an employee has issues with what was noted in his or her PEFD as a "Development Area," a PCP may be appropriate.  Id. at PageID.981.  Bracy's 2018 PEFD noted four "Development Areas." 2018 PEFD at PageID.1009–1010.

The guide also provides that an employee must have been "adequately notified that his/her performance and/or behavior is unacceptable."  PCP Leader Consulting Guide at PageID.1065. And it states that factors to assess in determining whether corrective action is necessary include adequate notification of performance issues, reasonable expectations and standards, fair and objective review, objective or observable facts, consistent treatment, and appropriateness of corrective measures.  Id.  As the magistrate judge noted, Kosnik testified that "adequate notification" of performance issues could include "periodic check-ins," informal feedback, a

meeting, reaching out to the employee through email after someone whom the employee works with raises an issue with performance, or "any method."  Kosnik Dep. at PageID.979.  Scott communicated with Bracy through informal feedback sessions, the review of his 2018 PEFD, and emails after other employees told Scott about Bracy's performance issues.

Therefore, Bracy cannot establish that his termination occurred under circumstances giving rise to an inference of discrimination based on his allegation that Consumers violated internal policies in issuing a PCP.

### 2. Replacement by Someone Outside the Protected Class or Different Treatment than a Similarly Situated Employee

Bracy can satisfy the fourth element of a prima facie case by showing (i) that he was replaced by someone outside the protected class or (ii) that he was treated differently than a similarly situated employee who did not have the protected characteristic.  Town, 568 N.W.2d at 68; Matras, 385 N.W.2d at 589.

Bracy was not replaced by someone outside the protected class.  He was replaced by another white male who is older than him.  Consumers Supp. Answer to Interr. at PageID.1148.

Therefore, he must satisfy the similarly situated standard.  The Court agrees with the magistrate judge that Bracy has not produced evidence that he was treated differently than a similarly situated person of a different class for the same or similar conduct.  The Michigan Supreme Court has explained that "an employer's differing treatment of employees who were similar to the plaintiff in all relevant respects" except for the protected characteristic "can give rise to an inference of unlawful discrimination."  Hecht, 886 N.W.2d at 147.  "[F]or this type of 'similarly situated' evidence alone to give rise to such an inference, however, . . . the comparable employees must be nearly identical to the plaintiff in all relevant respects."  Id. (punctuation modified); see also Town, 568 N.W.2d at 70 (explaining that, to create an inference of disparate treatment, a plaintiff must

show that the plaintiff and a coworker "were similarly situated, i.e., all of the relevant aspects of [the plaintiff's] employment situation were nearly identical to those of [a coworker's] employment situation") (punctuation modified).

Bracy alleges that he was treated differently than younger, non-white, and female Consumers employees whose most recent annual PEFD ratings were "Effective" or lower, or who had similar or worse performance but who were not (i) subject to PCPs or (ii) terminated. Compl. ¶ 76. He also alleges that he was treated differently than similarly situated younger employees who were subject to PCPs but who were treated more favorably on their PCPs and were not terminated when they did not meet the terms of the PCPs. Id. ¶ 77.

Bracy identified younger, non-white, and female Consumers employees whom he stated were treated differently in their treatment on PCPs. Plaintiff Answer to 2nd Interr. (Dkt. 51-30). These individuals included the following:

1. B.W., who is white and female and was 50 years old when her employment was terminated;

2. M.L., who is Hispanic and female and was 50 years old when her employment was terminated;

3. E.S., who is white and male and was 56 years old when his employment was terminated; and

4. M.W., who is white and male and was 51 years old when his employment was terminated.

Luczak Decl. at 2–3 (Dkt. 51-31).

There are several reasons that these individuals do not show that Bracy was treated differently than comparable employees who were nearly identical to Bracy in all relevant respects and outside the protected classes. First, M.L. and M.W. were never placed on PCPs, so they cannot be used to show that Bracy was treated differently in regard to the PCP process. Id. Second, all these

24

individuals had their employment terminated.  Therefore, even if they were similar to Bracy in all relevant respects, they do not show that Bracy was treated differently than similarly situated employees whose annual PEFD ratings were "Effective" or lower or who had similar or worse performance and were not terminated.  Third, to the extent Bracy alleges that he was treated differently than similarly situated employees whose annual PEFD ratings were "Effective" or lower, or who had similar or worse performance and were not subject to PCPs, the record does not show the PEFD ratings or performance of these individuals.  Fourth, all these employees except for M.L. share one or more protected characteristics with Bracy.  Fifth, none of these employees worked in the Tools Department or reported to Scott, see Luczak Decl. at 2–3, and, therefore, they are not "nearly identical" to Bracy in two relevant aspects.[7]

Bracy attached to his response to Defendants' motion for summary judgment an exhibit that includes the PCPs of other Consumer employees.  Other Employees PCPs at PageID.435–465 (Dkt. 57-1).  But as the magistrate judge noted, Bracy does not explain that any of these employees are similarly situated in all relevant respects.  Further, the record contains demographic information for only three of these employees—three of whom were identified as men and two of whom were identified as white men.  Luczak Dep. at 169–183.  Therefore, Bracy has not shown that these employees were outside the protected classes.  And the PEFD ratings of these employees were below "Effective."  Id.  Therefore, the evidence does not indicate that these employees engaged in the same conduct as Bracy but were treated more favorably.

---

[7] Bracy argues that the magistrate judge erred when she stated that, to be deemed similarly situated, the individuals with whom the plaintiff seeks to compare his or her treatment must have dealt with the same supervisor.  Obj. at 16 n.9.  But the magistrate judge did not find that Bracy could not establish similarity solely because the individuals he identified did not report to the same supervisor.  And, regardless of what supervisor the individuals reported to, they are not similarly situated for the various reasons discussed above.

In his objections, Bracy points to evidence that he says is sufficient to create a genuine factual dispute as to whether Consumers terminated him because of his age, race, or sex. This evidence includes: (i) his personnel records; (ii) Luczak's testimony about the "collective employment decision"; (iii) Defendants' violation of PCP policies when they placed Bracy on a PCP and their later termination for Bracy's failure to achieve the goals in the PCP; (iv) Defendants' placement of Bracy on a PCP even though his 2018 PEFD rating was "Effective"; and (v) testimony from Kosnik and Luczak and documentary evidence that no other Consumers employee who had a PEFD rating of "Effective" had been subject to a PCP for performance issues and been terminated for failing to meet the PCP goals. Obj. at 15–16.

This evidence is insufficient to create a material factual dispute that Defendants were motivated by discriminatory animus. As noted above, Consumers' policies and the testimony of Luczak and Kosnik indicate that the issuance of a PCP is not tied to any particular PEFD rating. In addition, as the magistrate judge emphasized, Bracy's contention that he was the victim of disparate treatment based on his age, race, and sex because he was the only employee with an "Effective" rating who was subject to a PCP does not satisfy the similarly situated standard. This contention does not say anything about whether a similarly situated person outside of Bracy's protected class was treated differently. The record also does not show that Bracy was the only employee with a current "Effective" PEFD rating who was subject to a PCP or that he was treated differently than all younger, non-white, and female Consumers' employees who had this rating but who were not subject to a PCP unless they engaged in misconduct. And the consideration of a document with Bracy's age and tenure at the top during discussions about his employment termination, together with statements of Luczak and Kosnik that they could not recall whether another employee with

an "Effective" PEFD rating in 2018 was issued a PCP in 2019, are insufficient to create an inference of unlawful discrimination.

Therefore, Bracy has not established a prima facie case for his ELCRA claim. His third objection is overruled.

### D. Objection Four

The magistrate judge determined that, even if Bracy had made out a prima facie case for his ELCRA claims, Consumers articulated a legitimate non-discriminatory reason for terminating Bracy: the performance issues that led to the PCP and his failure to meet all of the goals in the PCP. R&R at 28. The magistrate judge also found that Bracy could not show that this reason was pretextual. Id. at 28–32. Bracy argues that the magistrate judge erred when she found that there was no genuine factual dispute as to whether Defendants' reasons for placing Bracy on the PCP and terminating him were pretexts for discrimination. Obj. at 17–24.

To rebut the presumption of discrimination that arises when a plaintiff has sufficiently established a prima facie case, the defendant must offer a "legitimate, nondiscriminatory reason" for the adverse employment action. Lytle, 579 N.W.2d at 914–915. The defendant "need not persuade the court that it was actually motivated by the proffered reasons." Id. Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. Id. at 915. Once the defendant produces such evidence, the burden shifts back to the plaintiff to raise a triable issue that the employer's reasons were not just false but, rather, a pretext for unlawful discrimination. Id.; see also Town, 568 N.W.2d at 68 (explaining that merely disproving an employer's nondiscriminatory reason is insufficient to survive summary judgment unless the plaintiff raises a triable question of discriminatory motive, not mere falsity). The Michigan Supreme Court has explained that the plaintiff must create a question of fact

27

regarding whether the consideration of a protected characteristic was a motivating factor in the employer's decision, meaning whether it made a difference in the contested employment decision. Hazle, 628 N.W.2d at 522.

To raise a genuine issue of fact as to pretext and defeat a summary judgment motion, a plaintiff must show one of the following: "(1) that the proffered reason[ ] had no basis in fact, (2) that the proffered reason[ ] did not actually motivate the action, or (3) that the proffered reason[ was] insufficient to motivate the action."  Cicero v. Borg-Warner Automotive, Inc., 280 F.3d 579, 589 (6th Cir. 2002) (punctuation modified).  Under the first and third methods of showing pretext, the factfinder may infer discrimination from the circumstances.  Id.; see also Town, 568 N.W.2d at 68 ("[T]he evidence and inferences that properly can be drawn from the evidence presented during the plaintiff's prima facie case may be considered in determining whether the defendant's explanation is pretextual.") (punctuation modified).  Under the second method, a plaintiff may not rely exclusively on prima facie evidence but instead must introduce some further evidence of discrimination.  Cicero, 280 F.3d at 589.

Bracy contends that Defendants' proffered reason for his termination—his performance and failure to successfully complete the PCP—has no basis in fact.  Repeating the arguments that he made in response to Defendants' motion for summary judgment, Bracy points to evidence that he states shows that Defendants' reason was pretextual.[8]  This includes the following:

  1. Defendants' personnel records;

  2. Luczak's testimony about the "collective employment termination decision";

---

[8] Bracy also argues that "[t]he direct and other evidence described above and that which is delineated at pp. 2–14 and footnotes 2–28 of the brief in support of Plaintiff's opposition to Defendant[s'] motion for summary judgment, and inferences that are permissibly drawn from the evidence in the record, in and of itself manifests that genuine issues of material fact remain . . . ." Id. at 19.  This is not a specific objection, and the Court is not obligated to develop Bracy's argument for him.  See McPherson, 125 F.3d at 995.

3. Testimony from Bracy and Scott that Scott "was uninformed about Bracy's actual job duties, responsibilities, and accomplishments";

4. Bracy's testimony "that there was no legitimate justification for the PCP since [his] most recent 2018 PEFD rating had been 'Effective,' Defendant Scott knew that reasons he propounded as support for the PCP were false, and the PCP included goals that Defendant Scott knew were not 'realistically achievable and measurable'";

5. Evidence that showed that instead of issuing a PCP, Scott should have "conducted the overdue 2019 PEFD informal feedback session with [Bracy], engaged in coaching of and informal, formal and structured discussions with [him], provided him with written job expectations and/or a targeted development plan, and/or given warnings with notice of potential consequences of any failure to heed warnings as the means to address any arguably legitimate concerns about [Bracy's] job performance";

6. Evidence that Defendants "did not abide by Consume[r]s' PEFD and PCP policies and practices after subjecting [Bracy] to the PCP, i.e. they did not provide [Bracy] with constructive feedback or guidance indicative of their support for [Bracy's] demonstrated efforts to timely achieve the realistically attainable goals of the PCP";

7. Evidence that Bracy "timely achieved the 4 achievable goals of the PCP" and proposed an alternative means, which Krieger found acceptable, to satisfy the goal that he attend FOS Team meetings; and

8. Evidence that Scott, Rickert, and Packard "had pre-judged the outcome of the PCP."

Obj. at 19–21.

For the reasons stated by the magistrate judge, this evidence does not show that the reason Defendants offered for Bracy's termination is a pretext for discrimination. The first and second pieces of evidence do not indicate that people involved in discussions about Bracy's termination considered Bracy's age and tenure, which were listed at the top of the document, in their decision to terminate his employment. This information also has no relation to Bracy's race discrimination claim. Regarding the third piece of evidence, even if Scott did not know all of Bracy's job duties, the communications between him and Bracy show that he understood Bracy's position and had

concerns about performance. Regarding the fourth and sixth pieces of evidence, the issuance of a PCP is not limited by a particular PEFD rating, and Scott held biweekly meetings with Bracy to discuss the PCP. Regarding the fifth piece of evidence, Bracy does not explain why Scott was obligated to take these other actions rather than issue a PCP. Regarding the seventh piece of evidence, the PCP indicates that Bracy did not achieve three of his PCP goals. And regarding the eighth piece of evidence, Scott testified that, around the end of the 90-day period, he discussed with Rickert and Packard that the possible outcome of Bracy's PCP was termination, and, therefore, the outcome was not "pre-judged." Scott Dep. at 216.

Bracy has not created an issue of fact regarding whether Defendants' legitimate, nondiscriminatory explanation for his termination was a pretext for age, race, or sex discrimination. Defendants are entitled to summary judgment on his age, race, and sex discrimination claims under ELCRA. Accordingly, Bracy's fourth objection is overruled.

### III. CONCLUSION

For the reasons stated above, the Court overrules Bracy's objections (Dkt. 75), adopts the recommendation contained in the magistrate judge's R&R (Dkt. 74), and grants Defendants' motion for summary judgment (Dkt. 51).


        SO ORDERED.

Dated: March 28, 2022                         s/Mark A. Goldsmith
        Detroit, Michigan                     MARK A. GOLDSMITH
                                              United States District Judge